KETHLEDGE, Circuit Judge,
dissenting.
Some lawsuits make sense only to lawyers. Here, it is undisputed that Buchanan’s debt remains entirely valid, notwithstanding that the debt is no longer enforceable in court. And it is likewise common ground in this appeal — since the majority agrees, Buchanan agrees (she has not challenged the district court’s determination to the contrary) and even the amici agencies agree — that Northland would have been within its lawful rights to send her a letter that simply recited the amount of her long-unpaid debt and demanded payment in full. The ostensible basis for this lawsuit, rather, is that Northland offered Buchanan a discount— that it offered to accept about 35 cents on the dollar of what she owed, rather than demand payment in full. One might expect a conscientious debtor either to accept this offer or, at worst, to ignore it. But Buchanan chose to sue Northland for making it.
Buchanan’s claim, such as it is, is that in making this offer, Northland’s use of a single word — “settlement”—was misleading as a matter of federal law. Specifically, in a letter to Buchanan, Northland stated that her creditor “is willing to reduce your balance by offering you a settlement!,]” and that, upon receipt of the discounted amount ($1,668, rather than $4,768), “your account will be satisfied and closed and a settlement letter will be issued.” As a statement of Northland’s willingness to accept a reduced amount in satisfaction of Buchanan’s debt, that language is straightforward and direct. But her reading is more gossamer: Buchanan says that the word “settlement” is one *401 frequently used in connection with lawsuits, which means that the word “settlement” intimates the prospect of legal action, which means that the settlement offer was actually an implied threat to sue, which would amount to a representation that the debt remained enforceable in court, which would be a “misleading representation” in violation of the Fair Debt Collection Practices Act.
This reading of Northland’s offer is implausible. The relevant perspective here is that of an unsophisticated debtor — an unsophisticated debtor, moreover, who by definition has received dunning letters for years without a lawsuit ever having been brought against her. In that context, the mere fact of another collection letter is itself no reason to think that a lawsuit might follow close behind. And the letter here says nothing about any lawsuit— which is good reason, so far the threat of a lawsuit is concerned, not to distinguish this letter from the legions of letters that surely preceded it. If anything, Northland’s willingness to settle the debt at a discount should make the letter seem less threatening, not more.
Buchanan’s arguments to the contrary (or more precisely, the arguments of her counsel) reflect a different perspective. Not the perspective of the unsophisticated debtor, but rather our own perspective as lawyers and judges — whose work, by definition, is done through the vehicle of lawsuits. And from that lawsuit-saturated perspective, Buchanan suggests, we should conclude that, of the many different meanings of the word “settle” — many of which have nothing to do with lawsuits — the unsophisticated debtor would read North-land’s offer to accept a 65% discount in “settlement” of her account as a threat to sue her instead. But we have no basis to read a single word — “settlement”—from a lawyerly perspective and the rest of Northland’s letter from an unsophisticated one. To the contrary, we are bound to apply the unsophisticated-debtor standard all the way through.
Buchanan also argues that Northland’s use of the word “settlement” is misleading because “[a]n offer to settle implies a col-orable obligation to pay.” Complaint ¶ 21; see also Appellant Br. at 34 (“Using ‘settlement’ in the Letter implies a legal obligation”). But Buchanan’s premise is wrong — she does have a legal obligation to pay her debt, even though that obligation is no longer enforceable in court. See De Vries v. Alger, 329 Mich. 68, 44 N.W.2d 872, 876 (1950) (“The running of the statute of limitations does not cancel the debt, it merely prevents a creditor from enforcing his claim”). Indeed the validity of Buchanan’s debt — she did, after all, receive goods or services that she did not pay for — is the reason why Northland un-disputedly would have been within its rights simply to demand that she pay all the money she owes.
There remains, as the majority points out, an equitable point — that if a debtor sends a creditor less than the settlement amount, then under Michigan law (and that of many states) the limitations period runs anew and the debt becomes enforceable again in court. Virtually no one, save the creditors themselves, would welcome that result. But Northland’s letter nowhere invites that result; and if it arose, that result would be the fault of state substantive law, which we have no license to change. In any event, that ease is not the case before us here.
"In this case, rather, Buchanan seeks up to $1,000 in statutory damages — for herself, and also for each member of a putative statewide class — for the trouble of reading a letter that offered her a discount on an entirely valid debt that for years she failed to pay. I would reject this claim as *402 a matter of law, rather than continue to make a federal case out of it.
I respectfully dissent.